UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                          :
CHRISTOPHER FARAONE,                      :          13cv9074 (DLC)
                                          :
                         Plaintiff,       :          OPINION AND ORDER
                                          :
          -v-                             :
                                          :
THE CITY OF NEW YORK, SERGEANT BOGDAN     :
FRYC, DEPUTY INSPECTOR HOWARD REDMOND,    :
OFFICER SHANE MATHAI, INSPECTOR TED       :
BERNSTEN, and POLICE OFFICERS JOHN DOE    :
and JANE DOE #1 THROUGH #10, said         :
names being fictitious, it being the      :
intention to name all individuals        :
involved in the claims herein            :
                                          :
                         Defendants.      :
                                          :
---------------------------------------- X

APPEARANCES:

For the plaintiff:
Adam T. Mandell
Maynard O'Connor Smith & Catalinotto, LLP
Route 9W, P.O. Box 180
Saugerties, NY 12477

For the defendants:
Andrew Joseph Lucas
Joy Tolulope Anakhu
NYC Law Department, Office of the Corporation Counsel
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

     This dispute arises out of the arrest of Christopher

Faraone ("Faraone"), a journalist who was covering a protest

related to Occupy Wall Street ("Occupy") on September 17, 2012.

Faraone was arrested when he remained on a public sidewalk after

the police issued a dispersal order.  The plaintiff and the
defendants have each filed a motion for summary judgment on all
of the plaintiff's claims.  For the reasons that follow, the
plaintiff's motion is denied.  The defendants' motion is granted
in part.  The plaintiff's claims for false arrest and excessive
force survive.

## Background

The following facts are undisputed unless otherwise noted.
On September 17, 2012, there was a public demonstration to
commemorate the first anniversary of Occupy.  Faraone asserts
that he gathered information, photographed, and observed the
public demonstration in his capacity as a journalist.  At the
time, Faraone was employed by the Boston Phoenix, a newspaper.
While reporting on the protest, Faraone wore jeans, a blue t-
shirt, a flannel shirt, and a red baseball cap.  He was not
wearing a costume that associated him with the protest or
anything displaying a particular political message.  He carried
his cell phone, a notepad, pen, and a small point and shoot
camera.  Faraone did not have any external identification, such
as a placard or badge, which indicated that he was a journalist.
Faraone did not attempt to obtain press credentials from the
City.

At around 1:00 p.m., the protest moved through lower
Manhattan and arrived at One Chase Manhattan Plaza.  At that

point, the protesters blocked the sidewalk in front of the
entrance to One Chase Manhattan Plaza.  The entrance around
which the protesters congregated was on the west side of William
Street between Liberty and Cedar Streets.  Faraone took photos
while standing behind the police officers who were directing the
protesters and managing foot traffic.  The police ordered
Faraone out of the street and told him to go to the sidewalk on
the east side of William Street; Faraone complied.  Many of the
protesters then moved to a courtyard on the east side of William
Street at Cedar Street.  Faraone remained on the sidewalk on the
east side of William Street.  Faraone estimates that he was
standing about 20 feet north of the courtyard.  Police officers
used a bullhorn to issue several dispersal orders.  The
announcements indicated that failure to comply would result in
arrest.  The parties dispute whether the dispersal orders were
directed towards the area of the sidewalk where Faraone stood;
Faraone does not recall any orders to clear the area where he
was standing on William Street.  The parties also dispute
whether Faraone was blocking the sidewalk when he was standing
on William Street.

As the protest was being dispersed, Inspector Ted Berntsen
("Berntsen") pointed down the street towards Faraone.  The
parties dispute whether Berntsen pointed at Faraone to single
him out or the officer was pointing in his general direction.

3

Berntsen also gave orders to clear the sidewalk as he pointed in Faraone's direction, which was north on William Street.  Deputy Inspector Howard Redmond ("Redmond") walked north on William Street and worked on getting protesters to clear the sidewalk, but Faraone did not move when Redmond walked past him.  A female police officer asked Faraone to move, and almost immediately thereafter, he was arrested.  Sergeant Bogdan Fryc ("Fryc") was one of the officers who placed Faraone in custody.  Redmond assisted Fryc in handcuffing Faraone.

As his arrest was in progress, Faraone was taken to the ground.  The parties dispute whether Faraone attempted to pull himself free from the officers' grasp or otherwise struggled during the encounter.  The defendants submitted low-quality screen shots of a video that they claim show Faraone's arm holding his cell phone out right before police took him to the ground.  Faraone disputes the defendants' characterization of what the screen shots depict.  Faraone claims that the takedown procedure caused a painful injury to his elbow.  The few seconds when Faraone was on the ground, and the force the police used to take him down, are not captured on the videos of the incident.

Officers then placed Faraone in plastic handcuffs and walked him to a police vehicle that was about a block away. Officer Shane Mathai ("Mathai"), who had no prior interaction with Faraone, processed his arrest.  Unidentified officers

4

performed a pat-down search near the scene of the arrest and
discovered marijuana and a pipe.  Faraone waited for about ten
more minutes before he was taken to the police precinct.

Redmond and Fryc do not recall ever hearing the plaintiff
identify himself as a journalist.  Mathai did not learn that
Faraone was a journalist until he was at the holding cell in the
precinct.[1]  Faraone claims that unidentified police officers
cursed at him and used derogatory language when he indicated
that he was a journalist.  Faraone further states that he was
strip searched at the precinct, but he does not identify who
performed the search.  The defendants claim that no strip search
occurred.  Faraone also alleges that he was subject to
disparaging treatment while he waited in the holding cell, which
the defendants deny.

Faraone received a desk appearance ticket charging him with
disorderly conduct and was released from custody.  As he was
being released, Faraone was told "in a friendly way" not to
cover any more protest activity.  In a radio interview shortly
after his arrest, Faraone indicated his belief that he was not
targeted for arrest because of his coverage of Occupy protests.
Faraone sought treatment for his elbow injury two days after his

---

[1] Faraone also points to a police department policy that covers
certain incidents involving members of the media and claims that
Mathai did not conform his behavior to that policy after
learning that Faraone is a journalist.

arrest and release.  Faraone's criminal charges were later
dismissed.

Based on these events, Faraone brings four causes of action
pursuant to 42 U.S.C. § 1983: (1) excessive force; (2) illegal
search; (3) false arrest; and (4) violations of his rights under
the First Amendment.  His original complaint contained
additional claims under state and federal law, all of which he
withdrew when he filed an amended complaint.

The original complaint in this action was filed on December
23, 2013.  The case was selected for this district's § 1983
mediation plan under Local Rule 83.10.  An amended complaint was
filed on September 29, 2015.  The plaintiff moved for summary
judgment on October 28, and the defendants then moved for
summary judgment on November 6.  Faraone's motion for summary
judgment became fully submitted on January 4, 2016, and the
defendants' motion became fully submitted on January 18.  The
case was reassigned to this Court's docket on January 14, 2016.

## Discussion

Summary judgment may not be granted unless all of the
submissions taken together "show[] that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary
judgment is appropriate where the record taken as a whole could
not lead a rational trier of fact to find for the non-moving

party."  Smith v. Cty. of Suffolk, 776 F.3d 114, 121 (2d Cir.

2015) (citation omitted).  The moving party bears the burden of

demonstrating the absence of a material factual question, and in

making this determination, the court must view all facts in the

light most favorable to the non-moving party.  Eastman Kodak Co.

v. Image Tech. Servs.,Inc., 504 U.S. 451, 456 (1992); Gemmink v.

Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015).  "[W]here the

evidentiary matter in support of the motion does not establish

the absence of a genuine issue, summary judgment must be denied

even if no opposing evidentiary matter is presented."  Sec. Ins.

Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77,

83 (2d Cir. 2004) (citation omitted).

     Once the moving party has asserted facts showing that the

non-movant's claims or affirmative defenses cannot be sustained,

"the party opposing summary judgment may not merely rest on the

allegations or denials of his pleading; rather his response, by

affidavits or otherwise as provided in the Rule, must set forth

specific facts demonstrating that there is a genuine issue for

trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009)

(citation omitted); see Celotex Corp. v. Catrett, 477 U.S. 317,

322-23 (1986).  "[C]onclusory statements, conjecture, and

inadmissible evidence are insufficient to defeat summary

judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317

(2d Cir. 2011) (citation omitted), as is "mere speculation or

conjecture as to the true nature of the facts." Hicks v.
Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).
Only disputes over material facts -- "facts that might affect
the outcome of the suit under the governing law" -- will
properly preclude the entry of summary judgment. Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

     Faraone brought all of his claims under 42 U.S.C. § 1983
and the relevant provisions of the United States Constitution.
Section 1983 provides a cause of action for damages against
"[e]very person who, under color of any statute . . . of any
State . . . subjects, or causes to be subjected, any citizen . .
. to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws."  In other words, "[t]o
state a claim under § 1983, a plaintiff must allege that
defendants violated plaintiff's federal rights while acting
under color of state law." McGugan v. Aldana-Bernier, 752 F.3d
224, 229 (2d Cir. 2014), cert. denied, 135 S. Ct. 1703 (2015).
Further, "in order to establish a defendant's individual
liability in a suit brought under § 1983, a plaintiff must show
. . . the defendant's personal involvement in the alleged
constitutional deprivation." Grullon v. City of New Haven, 720
F.3d 133, 138 (2d Cir. 2013).  Vicarious liability is not
applicable to § 1983 suits. Littlejohn v. City of New York, 795
F.3d 297, 314 (2d Cir. 2015).  Thus, "to impose liability on a

municipality under § 1983, a plaintiff must identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Newton v. City of New York, 779 F.3d 140, 152 (2d Cir. 2015) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)).

## I.   False Arrest

The plaintiff brings a false arrest claim.  A false arrest claim requires a plaintiff to prove "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Liranzo v. United States, 690 F.3d 78, 95 (2d Cir. 2012) (citation omitted).  "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity."  Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015).  An officer "has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (citation omitted).  "Probable cause is determined on the basis of facts known to the arresting officer at the time of the

arrest."  Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir.

2015) (citation omitted).  The arresting officer is "not

required to explore and eliminate every theoretically plausible

claim of innocence before making an arrest."  Garcia, 779 F.3d

at 93 (citation omitted).

An officer "is entitled to qualified immunity against a

suit for false arrest if he can establish that he had arguable

probable cause to arrest the plaintiff."  Garcia, 779 F.3d at 92

(citation omitted).  "Arguable probable cause exists if either

(a) it was objectively reasonable for the officer to believe

that probable cause existed, or (b) officers of reasonable

competence could disagree on whether the probable cause test was

met."  Id. (citation omitted).  Courts "look to the information

possessed by the officer at the time of arrest" when determining

whether an officer's conduct was objectively reasonable.  Id.

(citation omitted).

Faraone was arrested for disorderly conduct, which is

criminalized under NYPL § 240.20.  He was specifically arrested

for violating §§ 240.20(5) and (6).  Section 240.20(5) provides

that it is a crime when, "with intent to cause public

inconvenience, annoyance, or alarm, or recklessly creating a

risk thereof [a person] obstructs pedestrian or vehicular

traffic."  Section 240.20(6) provides a person violates the law

when, with the requisite intent to cause public inconvenience, a

person "congregates with other persons in a public place and

refuses to comply with a lawful order of the police to

disperse."

Each party moved for summary judgment on the plaintiff's

false arrest claim.  The parties' arguments center around

whether there was probable cause for Faraone's arrest.  The

video evidence coupled with deposition testimony reveals that

there are genuine disputes of fact that are material to the

question of whether there was probable cause -- or arguable

probable cause -- to arrest Faraone.  The video shows that

Faraone was standing off to the side, away from the bulk of the

protesters before he was arrested on the east side of William

Street.  A jury will have to decide whether he was blocking a

sidewalk, whether he reasonably appeared to be part of a group

that was blocking the sidewalk, and whether the dispersal orders

applied to him.

## II.  Illegal Search

Faraone challenges the pat down search he received at the

location of his arrest.[2]  The legality of the pat down search

---

[2] It is unclear whether Faraone's illegal search claim is also
based on the strip search he claims occurred at the precinct.
The parties dispute whether the strip search happened, but if it
did, it necessarily occurred after the police discovered that
Faraone was carrying a small amount of marijuana.  Thus, to the
extent that his claim is based on the latter search, it fails as
a matter of law.  Florence v. Bd. of Chosen Freeholders of Cty.
of Burlington, 132 S. Ct. 1510, 1518-1520 (2012).

depends on the legality of Faraone's arrest.  <u>United States v.</u>
<u>Valentine</u>, 539 F.3d 88, 96 (2d Cir. 2008) (no probable cause to
support a search incident to an arrest where the underlying
arrest was not supported by probable cause).  The parties agree
that the police were entitled to conduct a pat down search of
Faraone if he were lawfully arrested, and that no such search
was justified if the arrest was illegal.  Faraone has not
identified any harm that he suffered from the pat down to
separate it from his general loss of liberty due to the arrest.
Accordingly, the defendants' motion for summary judgment on
Faraone's illegal search claim is granted.

## III. Excessive Force

Faraone contends that the officers used excessive force
during his arrest.  "[T]he right to make an arrest . . .
necessarily carries with it the right to use some degree of
physical coercion or threat thereof to effect it."  <u>Rogoz v.</u>
<u>City of Hartford</u>, 796 F.3d 236, 246 (2d Cir. 2015) (citation
omitted).  It is "also well established that law enforcement
officers violate the Fourth Amendment if the amount of force
they use is objectively unreasonable in light of the facts and
circumstances confronting them."  <u>Id.</u> (citation omitted).
Determining whether the force used was reasonable "requires
careful attention to the facts and circumstances of each
particular case, including the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of
the officers or others, and whether he is actively resisting
arrest or attempting to evade arrest by flight." Id. (citation
omitted). These facts must be "judged from the perspective of a
reasonable officer on the scene at the moment the force is
used." Id. at 246-47 (citation omitted). Officials are
entitled to qualified immunity for an excessive force claim if
"their decision was reasonable, even if mistaken." Id. at 247
(citation omitted).

The parties agree that Faraone was taken to the ground
during his arrest. They dispute, however, many facts material
to determining whether the amount of force used was reasonable
under the test described above. For example, they dispute
whether and the degree to which Faraone physically resisted his
arrest. They dispute how many officers were directly involved
with tackling him to the ground. Moreover, the moments during
which Faraone was taken to the ground are not captured on the
videos of the incident. Although Faraone's head is visible in
one of the videos, his body and the officers who applied the
force at issue are obscured by other protesters and officers.
Because there remain triable issues of fact both on the merits
of the excessive force claim and the qualified immunity defense,
summary judgment is denied.

## IV.   First Amendment Violation

Faraone generally alleges that he was targeted for arrest because he attended the protest as a journalist.  The defendants have construed Faraone's First Amendment claim as one for retaliation.  In order to state a retaliation claim, a private citizen must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).  Thus, Faraone must prove that his arrest was motivated by the exercise of his First Amendment rights as a journalist.

The defendants' motion for summary judgment on this claim is granted.  Faraone has not presented evidence from which a jury could find that he was targeted for arrest because he was a journalist.  Faraone was dressed casually and did not wear any insignia that identified him as a member of the press.  At the time of his arrest, Faraone was using his cell phone and was not writing in his notepad.  The arresting officers do not remembering hearing Faraone say he was a journalist, nor does Faraone allege that he told them he was a journalist until after he was in custody.  Moreover, Faraone gave a radio interview in which he stated that he did not believe he was targeted because of his work covering the Occupy movement.  In the radio

14

interview, he indicated his belief that he was arrested as a signal to the crowd that the officers' dispersal orders should be taken seriously.

Faraone's arguments to the contrary are not persuasive. Faraone argues that, because he stood apart from the protesters and was not chanting with them or wearing a costume, the police officers should have known he was a member of the press.  While Faraone's apparent lack of participation in the protest bears on whether there was probable cause to arrest him, it does not on its own show that the officers would have been on notice that he was a journalist or that they selected him for arrest because he was engaging in journalism.

Faraone's other arguments reference events that took place after his arrest.  He does not contend that these events caused him some separate injury or chilled his speech.  Finally, Faraone argues that defendant Mathai should have followed a department policy concerning police interactions with the media once he learned that Faraone was a journalist.  Since Mathai did not learn of Faraone's employment as a journalist until after Faraone was arrested and taken to the police precinct, Faraone does not explain how the policy would have altered the course of the events that give rise to his First Amendment claim.

V.    **Personal Involvement, Municipal Liability, and Damages**

The defendants make three additional arguments in support

of their motion for summary judgment: (1) certain of the

defendants were not personally involved in his arrest; (2) there

is no basis for municipal liability; and (3) Faraone's ability

to recover damages was cut off when the police discovered that

Faraone had marijuana with him when he was arrested.

## A. Personal Involvement

As discussed above, a defendant must be personally involved

in a constitutional deprivation in order to be liable under

§ 1983.  The defendants contend that Mathai is not a proper

defendant because he was not personally involved in Faraone's

arrest or the use of force to effect that arrest.  Faraone does

not oppose Mathai's dismissal.

The defendants also claim that Berntsen was not involved in

Faraone's arrest aside from pointing in his direction shortly

before he was arrested.  The motion to dismiss the claims

against Berntsen is denied.  At trial, Faraone will have to

prove which officers were personally involved with each alleged

constitutional deprivation.  Since two of his underlying claims

survive, it will be left to the jury to decide which officers,

if any, should be held liable in connection with Faraone's

arrest and the use of excessive force.

## B. Municipal Liability

In order to hold the City liable for Faraone's claims, he

must "identify a municipal 'policy' or 'custom' that caused

[his] injury." <u>Newton</u>, 779 F.3d at 152 (citation omitted).

Faraone named the City as a defendant in the action but has not

specifically alleged a policy or custom pursuant to which his

constitutional rights were violated.[3]  He did not address <u>Monell</u>

liability for his claims in his brief filed in opposition to the

defendants' summary judgment motion.  Nor did Faraone identify a

basis for such liability in his moving papers in support of his

own motion for summary judgment.  In the absence of any evidence

suggesting that a municipal policy or custom resulted in

Faraone's arrest or altercation with the police Faraone's claims

against the City must be dismissed.

### C. Damages

The defendants contend that, if Faraone's arrest and

initial detention were improper, his right to recover damages

for those events is cut off by the discovery of marijuana and a

pipe.  In <u>Townes v. City of New York</u>, 176 F.3d 138, 149 (2d Cir.

1999), the Second Circuit limited § 1983 damages to the "brief

invasion of privacy related to the seizure and initial search"

that occurred before probable cause existed.  In other words, a

plaintiff can only recover damages for a false arrest and

---

[3] The only specific policy that Faraone mentions in his briefs is
the police department's policies regarding incidents with the
press.  Because his underlying First Amendment claim is
dismissed, that policy cannot result in municipal liability.

resulting detention that occurred before probable cause was
established, even if probable cause was established using the
fruits of an illegal arrest or search.  Id.

It is undisputed that the initial pat down search of
Faraone uncovered marijuana, and that the discovery established
probable cause to arrest Faraone for violating NYPL § 221.05.
The discovery of marijuana thus terminated Faraone's right to
damages for false arrest.

Faraone does not meaningfully challenge the defendants'
argument.  Faraone argues that he was not charged with unlawful
possession of marijuana.  While the arrest report indicates that
Faraone was charged with possession of marijuana, his desk
appearance ticket lists his only charge as "DIS CON," which
presumably references disorderly conduct.  Whatever charge is
included on the desk appearance ticket, once there is probable
cause for an arrest, a plaintiff can no longer recover damages
for a false arrest.  Whether the marijuana was the "cause" of
Faraone's continued detention is not relevant to the issue of
whether there was probable cause to detain Faraone for an
offense.  Marcavage v. City of New York, 689 F.3d 98, 109-10 (2d
Cir. 2012).  Faraone may seek damages on his false arrest claim
only for injuries related to that claim that occurred prior to
the discovery of marijuana.  This ruling has no effect on his
ability to recover damages for any use of excessive force at the

time of arrest.

## Conclusion

The plaintiff's October 28, 2015 motion for summary judgment is denied.  The defendants' November 6, 2015 motion for summary judgment is granted in part.  All claims against Mathai and the City of New York are dismissed.  The claim for an illegal search and the First Amendment claim are dismissed.  Any damages for the alleged false arrest terminate at the time the marijuana was discovered on Faraone's person.  The claims that remain for trial are for false arrest and excessive force against certain individual defendants.

Dated:    New York, New York
          March 21, 2016

_____
DENISE COTE
United States District Judge

19